IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEVEN B. WALL,                )
                               )
           Plaintiff,          )
                               )
     v.                        )      15cv731
                               )
TRAJAN LANGDON,                )
                               )
           Defendant.          )

**MEMORANDUM ORDER**

Plaintiff Steven B. Wall brings a single claim against Defendant Trajan Langdon for breach of contract, alleging that while Wall performed, Langdon never paid him. (Doc. 1 at 3.) Langdon does not dispute the contract but denies that he owes any debt and brings affirmative defenses and counterclaims. (Doc. 8 at 1-4, 6, 9-13.) Before the court now is Wall's motion to dismiss Langdon's counterclaims, to strike Langdon's affirmative defenses, and for judgment on the pleadings. (Doc. 12.) For the reasons set forth below, Wall's motion to dismiss will be granted in part and denied in part, and his motion to strike and motion for judgment on the pleadings will be denied.

**I.   BACKGROUND**

On July 17, 2013, Wall agreed to assign his 100% membership interest in Infinity Communications, LLC ("Infinity") to Langdon in exchange for a promissory note ("the Note") for $261,000. (Doc. 1 at 2; Doc. 8 at 18.) Under the Note, the principal and

accrued interest were due on February 28, 2014. (Doc. 1-3 at 1.) Wall contends that Langdon failed to pay and has ignored his notice of default. (Doc. 1 at 2.) This action followed.

Langdon's answer admits that the Note is authentic and served as consideration for the transfer of Wall's interest in Infinity. (Doc. 8 at 7.) However, Langdon denies failing to make payment on the Note. (See id. at 6-7; Doc. 1 at 2.) He also denies that any debt is owed based on three affirmative defenses and four counterclaims for alleged breaches of the agreement to transfer Wall's interest in Infinity. (Doc. 8 at 1-4, 9-13.) Wall now challenges various aspects of Langdon's answer and counterclaims.

**II. ANALYSIS**

   **A. Motion to Dismiss Langdon's Counterclaims**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). Federal Rule of Civil Procedure 8(a)(2) establishes the rule for pleadings and "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Factual

2

allegations must be considered true and viewed in the light most favorable to the plaintiff. Francis, 588 F.3d at 192. Labels and conclusions, by contrast, are not entitled to an assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009); McCleary-Evans, 780 F.3d at 585. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Instead, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). These rules apply to counterclaims, as well as complaints. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011).

With these standards in mind, the court turns to the specific contentions raised by Wall.

**1. Breach of Contract: Unpaid Insurance Premiums**

Wall moves to dismiss Langdon's first counterclaim for breach of contract, which alleges that Wall failed to disclose overdue worker's compensation insurance premiums in the sale of Infinity. (Doc. 8 at 9.) Upon taking control of Infinity, Langdon contends, he was forced to "satisfy this outstanding

3
Revising:

allegations must be considered true and viewed in the light most favorable to the plaintiff. Francis, 588 F.3d at 192. Labels and conclusions, by contrast, are not entitled to an assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009); McCleary-Evans, 780 F.3d at 585. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Instead, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). These rules apply to counterclaims, as well as complaints. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011).

With these standards in mind, the court turns to the specific contentions raised by Wall.

**1. Breach of Contract: Unpaid Insurance Premiums**

Wall moves to dismiss Langdon's first counterclaim for breach of contract, which alleges that Wall failed to disclose overdue worker's compensation insurance premiums in the sale of Infinity. (Doc. 8 at 9.) Upon taking control of Infinity, Langdon contends, he was forced to "satisfy this outstanding

debt and obligation in order to prevent the workers' compensation insurance policy from lapsing." (Id. at 10.)

As part of the "Agreement to Assign Membership Interest," which Langdon attaches to his answer and counterclaims, Wall covenanted that "there [were] no liabilities not disclosed on the books and records of [Infinity], and [that he] agree[d] to indemnify and save harmless [Langdon] from any undisclosed liabilities as of July 14, 2013." (Id. at 20.) Langdon contends that Wall breached this covenant in the following manner: "That the outstanding premiums that were due to the workers' compensation insurance carrier was a liability that was not disclosed on the books and records of Infinity that [Wall] disclosed to the [counterclaim-]Defendant Langdon." (Id. at 9 (emphasis added).)

Wall argues that Langdon's inclusion of the highlighted clause renders his theory of breach invalid, because it could be construed to allege merely that the insurance liability was not included in whatever was disclosed to Wall, and not that the liability was omitted from the books and records of Infinity. (Doc. 13 at 5-7.) Wall notes that the contract contemplates disclosure upon request. (Doc. 8 at 22.) This is true, but the counterclaim, viewed in the light most favorable to Langdon, as it must be, charges that Wall in fact disclosed books and records to Langdon. (Id. at 9.) This is sufficient at this

4

stage to allege that Wall concealed the liability at issue in the books and records. See, e.g., Bicycle Transit Auth. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (citations omitted)). Whether the facts will bear out Langdon's claim remains to be seen. Therefore, the motion to dismiss on this ground will be denied.

### 2. Breach of Contract: Promissory Notes

Langdon's second counterclaim is for breach of contract based on Wall's execution of three promissory notes to himself on behalf of Infinity totaling $261,429.43. (Doc. 8 at 10.) Wall contends these promissory notes were executed in June 2013, approximately one month before closing on the membership assignment. (Id. at 3.) Langdon contends that these liabilities were not disclosed on the books and records disclosed to him. (Id. at 11.)

Wall contends, in part, that this claim must be dismissed because Langdon has failed to allege that a loss resulted from the alleged failure to disclose the three promissory notes. (Doc. 13 at 8.) Ordinarily, the failure to perform a disclosure obligation would constitute a breach such that Langdon would be entitled to at least nominal damages. See, e.g., Turner v.

5

Ellis, 179 N.C. App. 357, 363, 633 S.E.2d 833, 887-88 (2006); Catoe v. Helms Const. & Concrete Co., 91 N.C. App. 492, 496-97, 372 S.E.2d 331, 335 (1988). Accordingly, Wall has failed to demonstrate that Langdon's claim should be dismissed at this early stage.

### 3. Breach of Contract: Wire Transfers

Langdon's third counterclaim is for breach of contract based on Wall's alleged withdrawal of $257,000 in operating capital from Infinity's bank accounts. (Doc. 8 at 11-12.) Langdon contends that this withdrawal occurred via wire transfer "just before" the assignment agreement took effect. (Id.) Despite the fact that these withdrawals left Infinity's bank accounts with "a negative balance of more than $10,000" and required Langdon to "infuse several hundred thousand dollars of operating capital" into Infinity, Langdon does not assert breach on the basis of an undisclosed liability. (Id. at 12.) Instead, he contends that Wall breached the assignment agreement by "fail[ing] to transfer to the Defendant Langdon the bank accounts of Infinity with the operating capital in place as of the Closing Date." (Id.)

Wall responds that Langdon's claim must be dismissed because the assignment agreement only required transfer of Wall's membership interest, not the assets and liabilities of Infinity. (Doc. 13 at 8.) But while Langdon was only acquiring

6

a membership interest, see Doc. 8 at 18 ("Agreement to Assign Membership Interest"), Wall's alleged actions would have impaired that interest. Both before and after the sale, undistributed assets belonged to Infinity. See N.C. Gen. Stat. § 57D-5-01 ("An ownership interest is personal property"); N.C. Gen. Stat. § 57D-5-02 ("The transfer of an economic interest or portion thereof does not entitle the transferee to become or exercise any rights of a member other than to receive the economic interest or the portion thereof assigned to the transferee."); Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer, 2007 NCBC 14, ¶ 27, 2007 WL 2570749, at *6 (N.C. Super. Ct. 2007); 6 Strong's North Carolina Index 4th, Assignment of Membership Interests § 244 ("[A] member of a limited liability company has no interest in specific property of the company."). Every contract contains an implied covenant of good faith and fair dealing that neither party will act so as to deprive the other party of the benefits of the agreement. Bell, 314 N.C. at 228, 333 S.E.2d at 305. Absent an agreement to the contrary, the implied covenant of good faith and fair dealing prohibited Wall from removing all of the operating capital just before transfer. See Maglione v. Aegis Family Health Ctrs., 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) ("All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an

7

agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose."). Wall's motion to dismiss Langdon's breach of contract counterclaim based on the wire transfers will therefore be denied.

**4. Breach of Contract: Application Software**

Langdon's fourth counterclaim is for breach of contract based on Wall's failure to convey certain application software. (Doc. 8 at 13.) Langdon argues that "as a part of the negotiations of the purchase of Infinity" he and Wall reached a partnership agreement whereby Infinity and Wall would jointly own certain application software. (<u>Id.</u>; Doc. 16 at 8.) The assignment agreement, which contains a merger clause (Doc. 8 at 24), makes no mention of any partnership agreement or the transfer of any software (<u>see</u> <u>id.</u> at 18-26). Based on the face of the complaint, the alleged obligation arose from the assignment of Wall's interest in Infinity, which is covered by the assignment agreement, which in turn expressly disclaims the existence of any other agreement. Therefore, Langdon's claim will be dismissed, but without prejudice in event he can allege facts sufficient to avoid the application of the merger clause.

**B. Motion to Strike Affirmative Defenses**

Langdon has asserted affirmative defenses of accord and satisfaction, estoppel, and guarantee. (Doc. 8 at 1-4.) Wall

8

moves to strike them. (Doc. 12.) Federal Rule of Civil Procedure 12(f) permits the court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). To be entitled to such relief, a party must make a showing of prejudice. E.g., Staton v. N. State Acceptance, LLC, No. 1:13-CV-277, 2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013). Prejudice has been found to result where "inclusion of the defense would result in increased time and expense of trial, including the possibility of extensive and burdensome discovery." Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003) (emphasis and citations omitted).

Here, Wall contends that inclusion of the defenses will cause "him to expend unnecessary time and expense." (Doc. 13 at 15.) However, the asserted affirmative defenses are based on the same alleged conduct as Langdon's counterclaims. (Doc. 8 at 1-4.) For example, the first and second defenses, for accord and satisfaction and estoppel, are principally based on the wire transfers discussed above. (Id.) The third defense of guarantee is based on the executed promissory notes. (Id. at 3-4.) Because Langdon's breach of contract claims based on this conduct is going forward, there will be little to no additional

9

discovery burden imposed on Wall by permitting theses defenses to remain. Accordingly, Wall's motion to strike will be denied.

**C. Motion for Judgment on the Pleadings**

Wall contends that he is entitled to judgment on the pleadings on his breach of contract claim. "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Med-Trans Corp. v. Benton, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008) (citations omitted). Here, judgment on the pleadings cannot be granted because there is a material dispute of fact. Although Langdon concedes that he executed the Note and that it is authentic, his answer denies Wall's contention that no payments have been made on the Note. (Doc. 8 at 6.) In other words, in addition to claiming the absence of any debt on the basis of Wall's alleged breach of contract, Langdon has denied nonpayment. (Id.) Whether or not payment has occurred is thus a disputed fact preventing this court from granting judgment on the pleadings.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Wall's motion to dismiss (Doc. 12) is GRANTED IN PART AND DENIED IN PART in that Langdon's fourth counterclaim (regarding the application software) is

dismissed without prejudice, and Wall's motion to dismiss the remaining counterclaims as well as his motion to strike and motion for judgment on the pleadings are DENIED.

                                                              /s/   Thomas D. Schroeder
                                                          United States District Judge

August 9, 2016